**IT IS SO ORDERED.**

**SIGNED THIS: June 17, 2009**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MY TYPE, INC., | ) | No. 05-83236 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| RICHARD E. BARBER, not personally, but as Chapter 7 Trustee for My Type Inc., | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adv. No. 07-8183 |
| | ) | |
| REYNOLDS MOTOR LEASING COMPANY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**O P I N I O N**

Rearing its ugly head in this case is the issue of whether a lessor of a fleet of trucks whose leases are recharacterized as disguised security agreements is thereby rendered unperfected because the lessor is identified on the titles as owner instead of lienholder.

The Debtor, My Type, Inc. (DEBTOR), filed its Chapter 11 petition on June 30, 2005. Its primary business was as a provider of package delivery and related services. The

majority of the delivery vehicles used by the DEBTOR were leased from Reynolds Motor Leasing Company (REYNOLDS).  As of the petition date, the DEBTOR was a lessee under 84 individual leases with REYNOLDS.

In its Chapter 11 plan and disclosure statement, the DEBTOR took the position that the REYNOLDS' lease agreements were not true leases and should be treated as disguised sale and security agreements.  The plan was never confirmed.

The true lease issue was raised by REYNOLDS in a motion to compel the DEBTOR to assume or reject the leases, as true leases, under Section 365 of the Bankruptcy Code. Opposing the motion and relying upon the contract provisions giving the DEBTOR an option to purchase the leased vehicle at the end of the lease term for a relatively small sum (often just $100), the DEBTOR contended that the transactions should be construed as sales, not leases, as dictated by UCC Section 1-201(37).  That section states that "a transaction creates a security interest" if the lease is not terminable by the lessee before its stated term and where "the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement."  810 ILCS 5/1-201(37).

By order entered August 16, 2006, this Court determined that the 74 contracts between the DEBTOR and REYNOLDS that contained a purchase option price of $500 or less were to be treated as disguised sale and security agreements.  The 10 contracts where the purchase option price exceeded $500 were deemed to be true leases.  Thereafter, on December 27, 2006, on the United States Trustee's motion, the case was converted to Chapter 7.

On December 21, 2007, the Chapter 7 Trustee, Richard E. Barber (TRUSTEE), filed an adversary complaint against REYNOLDS, relying upon the Court's ruling that 74 of the contracts were to be treated as purchase and security agreements, alleging that REYNOLDS holds unperfected liens avoidable under Section 544 of the Code. In its Answer, REYNOLDS asserts several defenses, including that its lender, Bank One, holds a perfected security interest in the 74 vehicles. REYNOLDS alleges, and the TRUSTEE does not dispute, that on each of the 74 certificates of title, REYNOLDS is identified as the owner and Bank One as the lienholder.[1] The Court infers, consistent with regular commercial lending standards, that Bank One holds physical possession of the certificates of title.[2]

Although not specified in the complaint, it is clear from his papers that the TRUSTEE is exercising the strong arm power afforded by Section 544(a)(1), which gives a trustee the power to:

> [A]void any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1).

REYNOLDS filed its motion for summary judgment on February 27, 2009, arguing that a substantial compliance standard should apply so that its interest noted on the titles

---

[1] The TRUSTEE makes no mention of Bank One's interest in the vehicles. His silence implies that he views Bank One's liens as unavoidable. Since REYNOLDS' interest is subject to Bank One's liens, even if the TRUSTEE avoided REYNOLDS' interest, the TRUSTEE would obtain no greater rights than REYNOLDS had. Preservation of an avoided lien for the benefit of the estate does not grant the estate priority over other liens when, under state law, the other liens have priority over the avoided lien. *In re Carvell,* 222 B.R. 178 (1st Cir.BAP 1998).

[2] The Illinois Secretary of State, from whom all certificates of title issue, is required by law to mail certificates of title to the first lienholder, if there is one. 625 ILCS 5/3-116(a).

3

as owner instead of lienholder should be sufficient to constitute perfection. The TRUSTEE contends that a strict compliance standard should apply under which REYNOLDS is unperfected.

The parties agree that perfection of a security interest in a titled vehicle is governed not by the UCC, but by the Illinois Vehicle Code, specifically Section 3-202, which provides in pertinent part as follows:

> (a) Unless excepted by Section 3-201, a security interest in a vehicle of a type for which a certificate of title is required is not valid against subsequent transferees or lienholders of the vehicle unless perfected as provided in this Act.
>
> (b) A security interest is perfected by the delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required fee. The security interest is perfected as of the time of its creation if the delivery to the Secretary of State is completed within 30 days after the creation of the security interest or receipt by the new lienholder of the existing certificate of title from a prior lienholder or licensed dealer, otherwise as of the time of the delivery.

625 ILCS 5/3-202(a) and (b).

Illinois uses the "delivery" standard for perfecting security interests in vehicles whereby perfection is obtained by "mere delivery of the appropriate papers and fees to the proper officer . . . even if the certificate of title is never noted or issued." *In re Farnham,* 57 B.R. 241, 245 (Bankr.D.Vt. 1986) citing Note, *Secured Transactions: Certificates of Title-Delivery or Notation? The Lender's Dilemma,* 37 Okla. L. Rev. 618, 622 (1984). The primary alternative is the "indication" or "notation" standard where perfection occurs only when the lien is noted on the title or when the title is issued after notation. *Id.* The delivery standard adopted in Illinois is more friendly to secured creditors since perfection is achieved

4

notwithstanding undue delay by the issuing officer or negligent failure to cause the lien to be noted on the title.

The parties also agree that the issues of priority and the effect of a failure of perfection are governed by the Uniform Commercial Code. An unperfected security interest is subordinate to the rights of a lien creditor. 810 ILCS 5/9-317(a)(2).

A leading treatise favors the substantial compliance standard over the strict compliance standard. Barkley Clark, THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE, ¶ 12.03[1], p.12-23. Specifically addressing the disguised sale issue, Clark states:

> When a motor vehicle lease is a disguised Article 9 financing, showing the name of the lessor as owner rather than lienholder on the certificate of title should be sufficient because no third party could be misled.

Certificate of Title laws guard against secret liens by requiring the owner and any lienholder to be identified on the face of the title. Those laws also guard against a borrower's fraud by giving possession of the title to the lienholder. In light of these rules, a non-purchase money lender who takes a security interest in a titled vehicle, expects and requires the borrower to produce the original certificate of title with the borrower identified as "owner" thereon. If the borrower is unable to produce the title, the lender is then on notice of the likelihood that the borrower doesn't own the vehicle or that it is subject to a prior lien with the title in the possession of the lienholder. Either way, the lender cannot obtain a perfected first priority lien and, consequently, probably won't make the loan.

A lessee under a vehicle lease is not properly identified on the certificate of title as owner or in any other capacity. And the lessee should not be in possession of the title,

5

which will be in the hands of the lessor or the lessor's lender. Even if the lessee had possession of the original title, through error, the lessee's name would not appear on the title, thus putting the lessee's potential lender on notice that the vehicle is owned by a third party, not the lessee. While the lessor's ownership interest is subject to being recharacterized as a security interest, the fact that it claims an ownership interest is not secret but is evident from the face of the title. As Clark recognizes, no one who looks at the title could be misled that the party identified as owner has or is claiming to have an interest that contradicts any assertion of free and clear ownership by the lessee.

This rationale has been used by the following ten courts to support the determination that a lessor shown as owner on a certificate of title, whose lease is determined to be a disguised sale and security agreement, is nevertheless perfected under motor vehicle statutes.

1. *In re Charles,* 323 F.3d 841 (10th Cir. 2003) (Kansas law).

2. *In re Load-It, Inc.,* 774 F.2d 1077 (11th Cir. 1985) (Georgia law).

3. *In re Circus Time, Inc.,* 641 F.2d 39 (1st Cir. 1981) (Maine and New Hampshire law).

4. *In re National Welding of Michigan, Inc.,* 61 B.R. 314 (W.D.Mich. 1986) (Michigan law).

5. *In re Microband Companies, Inc.,* 135 B.R. 2 (Bankr.S.D.N.Y. 1991) (New York, New Jersey, Maryland and Michigan law).

6. *Matter of Rose Way, Inc.,* 113 B.R. 527 (Bankr.S.D.Iowa 1990) (Iowa law).

7. *In re Yeager Trucking,* 29 B.R. 131 (Bankr.D.Colo. 1983) (Colorado law).

8. *In re McCall,* 27 B.R. 106 (Bankr.W.D.N.Y. 1983) (New York law).

9. *In re Coors of the Cumberland, Inc.,* 19 B.R. 313 (Bankr.M.D.Tenn. 1982) (Tennessee law).

10. *In re Trivett,* 12 B.R. 373 (Bankr.E.D.Tenn. 1981) (Indiana law).

At least three other courts have, in *dicta,* expressed favor for the substantial compliance reasoning in the disguised sale context. *In re Thummel,* 109 B.R. 447 (Bankr. N.D.kla. 1989) (Covey, J.) (Oklahoma law); *In re Carraway,* 65 B.R. 51 (Bankr.E.D.N.C. 1986) (North Carolina law); *BJL Leasing Corp. v. Whittington, Singer, Davis & Co., Inc.,* 204 N.J.Super 314, 498 A.2d 1262, 1265 n.4 (N.J.Super.A.D, 1985).

Opinions from two other bankruptcy courts in Oklahoma support the TRUSTEE'S position. In *In re Hughen,* 38 B.R. 13 (Bankr.W.D.Okla. 1983), the seller of a van on a conditional sales contract was listed as owner on the Rhode Island Certificate of Title. The purchaser, the debtor, used the van in its business in Oklahoma. The debtor's Chapter 7 trustee sought to avoid the lien as unperfected. Rejecting the liberal construction arguments made by the seller, the court held the lien was unperfected where the seller had never obtained an Oklahoma title and had never filed any documents with the Oklahoma authorities.

In *In re Otasco, Inc.,* 111 B.R. 976 (Bankr.N.D.Okla. 1990), *rev'd on other grounds,* 196 B.R. 554 (N.D.Okla. 1991), after determining that a lease transaction was properly recharacterized as a disguised sale, the court addressed the lessor's argument that since the title identified it as the owner, it had substantially complied with the Oklahoma perfection requirement, even though it did not submit a lien entry form to the Oklahoma Tax Commission as required to obtain perfection under the Oklahoma Vehicle License and

Registration Act. The court relied, in part, upon the following special statutory provision:

> The Commission shall file and index certificates of title so that at all times it will be possible to trace a certificate of title to the vehicle designated therein, identify the lien entry form, and the names and addresses of secured parties, or their assignees, so that all or any part of such information may be made readily available to those who make legitimate inquiry of the Commission as to the existence or nonexistence of security interest in the vehicle.

*Id.* at 990.

The court emphasized that it is the information provided in the lien entry form that permits the Commission to perform its statutory function of answering inquiries about whether a particular vehicle is subject to a security interest. *Id.* at 990. The court characterized the lien entry form as a separate requirement for perfection "in addition to any certificate of title or application therefor," and "regardless of what may or may not appear on any certificate of title." *Id.* at 990. The court also characterized the creditor's failure to comply with the statutory perfection requirements as "not inadvertent but deliberate and intentional, committed in furtherance of a scheme to misrepresent the true nature of the transaction." *Id.* at 992. On the facts before it, the court determined that the lessor had not substantially complied with the perfection requirements.

In this Court's view, *Hughen* and *Otasco* are unusual cases that should be limited to their facts and to the peculiarities of Oklahoma law. The Illinois Motor Vehicle Code contains no similar provision that makes the Secretary of State or the Department of Motor Vehicles responsible for responding to inquiries about whether a particular vehicle is encumbered with a lien.

The TRUSTEE does not rely upon *Otasco or Hughen* and does not contend that any of the majority decisions is wrongly decided based on the state law in question. Instead, without citing any Illinois case law, the TRUSTEE argues that, unlike the courts of other states, Illinois courts would impose a rule of strict compliance on lien perfection under the Illinois Vehicle Code. The Court is satisfied that the issue has not been addressed by any Illinois court. Absent Illinois precedent, this Court must predict how the Illinois Supreme Court would determine the issue and rule accordingly. *MindGames, Inc. v. Western Pub. Co., Inc.,* 218 F.3d 652, 655-56 (7th Cir. 2000) (in a case in federal court where state law provides the rule of decision, federal court must predict how state's highest court would decide the case, and decide it the same way).

As pointed out by REYNOLDS in its brief, the Seventh Circuit has applied a substantial compliance standard to an earlier version of the statutory provision in question in *Matter of German,* 285 F.2d 740 (7th Cir. 1961). It should be noted that the provisions of the Illinois Vehicle Code pertaining to security interests that became effective January 1, 1958, were based upon the 1956 Uniform Vehicle Code prepared by the National Committee on Uniform Traffic Laws and Ordinances. *See* Source Comments to §§ 3-201 to 3-210, Smith-Hurd Illinois Annotated Statutes, Ch. 95 1/2 § 1-100 *et seq.* (West Pub. Co. 1971).[3] It should also be noted that the language of the 1959 version of section 3-202(b) at issue in *German* is identical in all material respects to the present version of section 3-202(b),

---

[3]The Source Comment to § 3-201 provides:

> The state of Illinois was the first state to enact substantially in full the provisions of the 1956 Uniform Vehicle Code in relation to security interests. The provisions of the Uniform Vehicle Code in relation to security interest were thought to be indicative of the best principles of commercial law in relation to vehicles.

9

with one difference. The 1959 version required the application for title, in addition to identifying the lienholder by name and address, to state the date of the security agreement (information no longer required).

The application for title in question in *German* mistakenly failed to state the date of the security agreement. When the vehicle's owner filed for bankruptcy relief, the trustee challenged the lien as unperfected. Ruling for the secured creditor, the court reasoned:

> On petition to review the Referee's decision, the District Court held that to place so strict a construction on the statute, under the facts of this case, was to overlook the evident intent of the Legislature. The Courts of Illinois had not yet interpreted this section of the Motor Code, but the District Court was convinced, as we are, that this section, like other Illinois recording Acts, should be construed as primarily a constructive notice statute, to protect a lienor who has substantially complied with its provisions in his attempt to perfect his lien.

*Id.* at 742.

In his brief, the TRUSTEE does not address *German,* but cites a later Seventh Circuit opinion, *Matter of Keidel,* 613 F.2d 172 (7th Cir. 1980), for the proposition that strict compliance with the lien perfection requirements of the Illinois Vehicle Code is now the order of the day. *Keidel,* however, does not involve a lease disguised as a sale, does not address the substantial versus strict compliance dichotomy, and does not refer to *German.*

Before bankruptcy, Mrs. Keidel borrowed $3,500 from a bank to finance the purchase of a mobile home. Contrary to the procedure laid out in the applicable statute, which places the responsibility on the new lienholder to mail or deliver to the Secretary of State the existing certificate of title, application for a new one and required fee, the bank

left it to Mrs. Keidel to take care of those details.[4]  For reasons not specified, she failed in her efforts to apply for a new title and then filed for bankruptcy relief. *Id.* at 173.  About one month *after* the bankruptcy filing, the bank finally took it upon itself to deliver an application for a new title to the Secretary of State, who promptly issued the new certificate of title with the bank's lien noted thereon.  The bankruptcy trustee was unimpressed and filed a complaint for turnover on the basis that the bank's lien was unperfected when the petition was filed.  Turnover was ordered by the bankruptcy court and affirmed by the district court.

The Seventh Circuit first noted that it is the state of affairs existing on the petition date that controls the outcome, since the trustee's avoidance powers gave him the status of a lien creditor as of the petition date.  Therefore, the post-bankruptcy perfection was not effective as against the trustee.  The court concluded that the bank had only itself to blame for failing to perform its statutory duty to mail or deliver the necessary documents to the Secretary of State.

It is apparent that the Seventh Circuit correctly viewed the case as one involving a creditor who acted negligently.  The bank had a statutory duty to take affirmative steps to perfect its interest, it was aware of those steps, it could have made performance of those

---

[4]The statute in effect at that time provided:

> If an owner creates a security interest in a vehicle:
>
>   (a)  The owner shall immediately execute the application, in the space provided therefor on the certificate of title or on a separate form the Secretary of State prescribes, to name the lienholder on the certificate, showing the name and address of the lienholder and the date of his security agreement, and cause the certificate, application and the required fee to be delivered to the lienholder.
>
>   (b)  The lienholder shall immediately cause the certificate, application and the required fee to be mailed or delivered to the Secretary of State.

95 1/2 Ill.Rev.Stat. § 3-203(a) and (b).

11

steps "a condition of advancing funds," *Id.* at 174, but did not, and it unjustifiably handed off that responsibility to its borrower. The bank got what it deserved and was in no position to cry foul, since the law applicable to secured transactions, reflecting a "creditor protect thyself" philosophy, emphasizes the need for diligence in obtaining perfection of a lien. *Id.* at 175.

The case at bar, however, is not about a creditor's negligence or lack of diligence, and the policies that justify discouraging such misbehavior are inapplicable. REYNOLDS' actions, with respect to the certificates of title, were proper for an owner/lessor. Its status as owner was correctly reflected on the titles. Illinois law does not require the lease of a vehicle or the identity of the lessee to be reflected on the certificate of title. When the leases were made and when the DEBTOR filed for bankruptcy relief, REYNOLDS was not out of compliance with any statutory obligation. In light of this distinction, *Seidel* provides little guidance.

The TRUSTEE also relies upon three bankruptcy court decisions to support his view that a strict compliance standard should apply. Like *Seidel, In re Dixon,* 36 B.R. 704 (Bankr.S.D.Ill. 1984), involved a debtor who failed to act to achieve perfection on behalf of a secured creditor. The debtor obtained a loan from a bank to purchase a semi-tractor. By mistake, the seller mailed the original certificate of title to the debtor who then refused to sign an application for a new title. The debtor defaulted and ultimately filed for bankruptcy protection.

Admitting that it was unperfected, the bank made a plea for equity, since the debtor had refused, without justification, to sign the title application. Citing *Seidel* as controlling

12

authority for the proposition that an inequitable result is no defense for a creditor that has failed to perfect its lien, the court issued judgment for the trustee avoiding the unperfected security interest.

In *In re Bell,* 194 B.R. 192 (Bankr.S.D.Ill. 1996), the court held that in Chapter 13 cases, the trustee may avoid unperfected security interests, leaving the creditors with wholly unsecured claims against the estates. The creditors argued that the court should exercise its equitable powers and deem their security interests perfected by way of equitable liens since it was the debtor's inaction or failure to cooperate which caused the liens to not be noted on the titles. The court rejected this argument, ruling that equitable liens arising under state law are ineffective against a trustee's Section 544(a) avoiding powers.

Finally, the TRUSTEE also relies upon an opinion by this Court in *In re Lortz,* 344 B.R. 579 (Bankr.C.D.Ill. 2006), holding that a creditor who mistakenly released its lien and mailed the original certificate of title to the debtor lost its perfected status so that its unperfected lien was avoidable by a bankruptcy trustee.

In an effort to bolster his argument for a strict compliance standard, the TRUSTEE cites these opinions as examples of federal courts strictly enforcing the Vehicle Code perfection requirements despite equitable arguments to the contrary. These decisions do not support the TRUSTEE. *Keidel, Dixon, Bell* and *Lortz* each concern a secured creditor, not a putative lessor, who was admittedly unperfected on the petition date and who was attempting to persuade the court, for reasons of equity or fairness, to ignore the facts relating to perfection and to ignore the law giving bankruptcy trustees the power to avoid unperfected liens. Understandably and correctly, each court rejected the creditor's request.

13

The case at bar does not involve a creditor who was admittedly or obviously unperfected on the petition date.

In addition, *Keidel, Dixon, Bell* and *Lortz* all focused on whether a lack of perfection should be overlooked where it was caused, at least in part, by the negligence or intentional misconduct of a third party. That question is not in play here. REYNOLDS places no blame on the DEBTOR or any third party. *Seidel, Dixon, Bell* and *Lortz* are not on point.

Because the disguised sale situation is unique, it does not lend itself well to arguments by analogy. A lease of personal property, subject to potential judicial recharacterization as a secured transaction, may be the only kind of commercial transaction where the creditor can't be certain at the outset how to protect its interest. Where the property is a titled vehicle, the lessor under a true lease is correctly designated as the owner on the title. Only when judicial recharacterization occurs is the lessor's interest placed in jeopardy.[5] Because the rules for true leases are different than those for secured transactions, the creditor is left to guess as to what to do.

Uncertainty, while it may be a boon to bankruptcy trustees, is the bane of commercial laws, whose primary purpose is to promote certainty in commercial transactions. *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434 (7th Cir. 2005) (purpose of UCC is to promote certainty of liability, finality, predictability, uniformity and efficiency in commercial transactions); *Euro Motors, Inc. v. Southwest Fin. Bank & Trust Co.*, 297 Ill.App.3d 246, 696 N.E.2d 711 (Ill.App. 1 Dist. 1998). The need for certainty underlies, at

---

[5] Judicial recharacterization under UCC section 1-201(37) is a complex exercise of discretion that is inherently unpredictable. Admittedly, this Court's determination that 74 of REYNOLDS' leases were in fact disguised sales was based upon an arbitrary line drawn at $500 for what constitutes "nominal" additional consideration. Other courts may well have drawn a different line or may have determined that all of the leases were true leases.

14

least in part, the decisions of the majority line of cases that hold that noting on the title a lessor's status as owner, rather than lienholder, is not fatal. Whether any particular personal property lease will hold up as a true lease or be recharacterized in the lessee's bankruptcy case as a disguised security agreement is unpredictable. This inherent uncertainty militates in favor of using the standard that is more sympathetic to the lessor's plight, the substantial compliance standard, at least where, as here, subsequent potential lienholders are not likely to be misled. Thus, a lessor will enjoy the certainty of knowing that even if the lease is recharacterized, its perfected status will endure through its identification as owner on the title. This result is consistent with the overall purpose of commercial laws.

Moreover, it is well-settled that decisions from other jurisdictions interpreting a uniform law, while not binding, are highly persuasive. *In re Pillowtex, Inc.,* 349 F.3d 711, 718 n.8 (3rd Cir. 2003); *In re Bartoni-Corsi Produce, Inc.,* 130 F.3d 857 (9th Cir. 1997); *In re Halferty,* 136 F.2d 640, 643 (7th Cir. 1943); *Triangle Marketing, Inc. v. Action Industries, Inc.,* 630 F.Supp. 1578, 1579 n.1 (N.D.Ill. 1986). This Court predicts that the Illinois Supreme Court would adhere to the substantial compliance policy adopted in *German* and would follow the majority line of cases allowing perfection to be obtained where the lessor is identified on the certificate of title as owner rather than lienholder. REYNOLDS' Motion for Summary Judgment will be granted.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###